**UNITED STATES of America, Plaintiff-Appellee,**

v.

**George Anthony PAULDINO, Defendant-Appellant.**

**No. 73–1366.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Oct. 17, 1973.

Decided Nov. 12, 1973.

Certiorari Denied March 18, 1974. See 94 S.Ct. 1572.

------♦------

Theodore S. Halaby, Asst. U. S. Atty. (James L. Treece, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

G. Kevin Conwick, Denver, Colo., for defendant-appellant.

Before SETH and DOYLE, Circuit Judges, and SMITH, District Judge.*

WILLIAM E. DOYLE, Circuit Judge.

The defendant was found guilty of the offense of willfully and knowingly receiving and retaining property stolen from the United States of America (an orange Volkswagen of value in excess of one hundred dollars), with intent to convert said property to his own use knowing it to have been stolen. The indictment contained other charges: Count I charged him with conspiring with one John Tumbarello and William Carl Gruenewald to knowingly and willfully convert to their own use property of the United States, the same Volkswagen mentioned above. In count II defendant was charged with aiding and abetting John Tumbarello in converting the Volkswagen and in count III with aiding and abetting Tumbarello in knowingly and forcibly rescuing and dispossessing property seized by the government. The government voluntarily dismissed counts I, II, and III at the commencement of the trial.

The facts are somewhat unusual: The Volkswagen described in the indictment was also unusual. It had been the property of the defendant Pauldino. The Secret Service agents arrested defendant while he was driving this vehicle, which is described as a "Super Beetle" with sun roof, cut-down seats, large mag wheels and special exhaust system. This car was searched after the arrest and the search resulted in the discovery of altered and stolen savings bonds, whereupon the Secret Service seized the vehicle on the basis that it had been used to convey altered obligations of the United States. At the time of the seizure the Volkswagen was registered in the name of defendant. The government thereafter proceeded to file forfeiture proceedings. An appropriate action was filed and notices were sent to defendant. He did not respond to the notices which were sent, nor did he take part in the proceedings. At the trial he testified that after the seizure of the vehicle in March 1972 he asked his attorney to file a petition on his behalf for a return of the vehicle and at that time was advised by his lawyer to "kiss ·the car goodbye". Although appropriate papers were prepared to seek return of the vehicle, it does not appear that these were ever processed. The vehicle was forfeited June 19, 1972 and on August 2, 1972 it was released to the Secret Service. While it was in the possession of an agent who on October 2, 1972 had parked it on the street in Denver at 3900 block south Oneida, it was taken by John V. Tumbarello on behalf of the lienholder, a Mr. Gruenewald who had loaned money to the defendant in exchange for a lien on the car. The evidence discloses that one Arnold Schatz told Pauldino that he had observed an orange Volkswagen similar to the one which Pauldino had owned in the 3900 block of south Oneida. Based on this, Pauldino observed the car and the "repossession" followed. The "repossession" was reported by the lienholder Gruenewald to the Denver Police Department. Also the theft of the vehicle was reported by agent Weaver to the Denver Police Department.

Meanwhile on November 2, 1972 a special agent of the Secret Service ob-

served Pauldino driving the orange Volkswagen in downtown Denver, and he placed him under arrest. Pauldino then explained that the Secret Service never legally owned the car, and that it had been repossessed by the lienholder and sold to Able Auto Sales of which he was an employee.

The logical inference from the entire record, which the jury apparently believed, is that the recapture of the vehicle was on behalf of the defendant. Trial and conviction was had on the charge of receiving, concealing, and retaining stolen property with knowledge of its having been stolen.

The defendant's contentions are that the government failed to prove beyond a reasonable doubt the essential elements of the count and that therefore the motion for directed verdict should have been granted. Also, since Tumbarello had been acquitted of the theft of the vehicle it is argued that this is conclusive that the property was not stolen property. It is also argued that Tumbarello believed that in repossessing he was acting on behalf of Gruenewald, the lienholder, and thus did not intend to steal it and that the absence of this essential element purged the act of its illegal character. Assuming that Tumbarello was an innocent agent of defendant, it is argued that the defendant did thus become a thief and he could not simultaneously be an unlawful receiver of the property.

Other points raised include:

The alleged error of the court in allowing examination of attorney Carl Harthun after the defendant had claimed the privilege of attorney and client;

The alleged error of the court in receiving the statement of the defendant made at the time of his arrest;

And the alleged error of the court in allowing the government to comment on matters of law in its closing arguments

I

SUFFICIENCY OF THE EVIDENCE

■ The evidence was adequate to establish that the automobile was received, concealed, and retained knowing that it was government property; that the defendant had the requisite intent to convert it to his own use; and that he acted with knowledge that it was stolen government property.

The circumstances fully support the conclusion that defendant engineered the recapture of the vehicle from the Secret Service and did so for his own purposes. The issue whether the defendant knew that his title had been divested and that the government had become the owner was submitted to the jury.

■ We perceive no legal impediment to this prosecution growing out of the acquittal of Tumbarello of the theft. This judgment did not have the effect of branding the car as non-stolen property. As to defendant, it could be stolen property. Thus if the jury believed that defendant as the principal used an agent to steal the car, he would have been guilty even though the agent was innocent. A person who employs an agent to take the property for him is as guilty as he would have been if he had taken the goods himself.[1]

■ Nor is there any legal obstruction to one being guilty of either larceny or receiving stolen goods growing out of

1. See 50 Am.Jur.2d Larceny §§ 13, 16, pp. 164–167. The author states at page 164 " . . . Where, with the intent to steal, a wrongdoer employs or sets in motion any agency, either animate or inanimate, with the design of effecting a transfer of the possession of the goods of another to him in order that he may feloniously convert and steal them, the larceny will be complete if, in pursuance of such agency, the goods come into the hands of the thief and he feloniously converts them to his own use. Thus, if the wrongdoer procures a person innocent of any felonious intent to take the goods for him, his offense will be the same as if he had taken the goods himself." See also the cases collected in 42 A.L.R. 272, 273, 275 (1926).

the same transaction. The cases appear to be in accord in holding that in a fact situation wherein the accused was an accessory before the fact to a larceny he may also be guilty of receiving stolen goods.[2]

We conclude that the defendant's argument that his conviction is ill-founded in law and in the evidence is wholly without merit.

## II

### ALLEGED ATTORNEY CLIENT PRIVILEGE.

■ The evidence elicited from Mr. Harthun was taken in camera. After that it was stricken from the record. At a later time the defendant testified about some of the matters which were presented. As to this, the trial court ruled that there had been an effective waiver. On this the court found: "It is the view of the Court that Mr. Pauldino takes the stand and testifies to these matters in regard to whatever efforts he would have made; he physically took that paper out to Mr. Gruenewald; that has waived any attorney-client privilege. He has testified on the periphery of these matters. There is no privilege here by him taking the stand and testifying to these matters. He is making these matters public. Let's go ahead. Objection will be noted. The objection will be overruled."

Counsel complains that some testimony presented to the jury was derived from the in camera evidence. The record is unclear on this. Both sides were seeking to develop these background facts so that it is impossible to draw distinct lines as to the existence of privilege, derivation, and waiver.

The trial court did not abuse its discretion in receiving the evidence.

## III

### ADMISSIBILITY OF DEFENDANT'S STATEMENT.

■ Next we consider whether the court erred in receiving a statement of defendant at the time of his arrest. It is argued that a hearing should have been held to determine its voluntariness. The statement is brief. It reads:

Q. Did Mr. Pauldino make any statement to you at that time?

A. He asked what he was being arrested for and we advised him auto theft, and he said it was not a stolen car, that he had—that he had a bill of sale for the vehicle. We asked him if he had it and he said he did not.

Q. Did he show you any document with regard to that bill of sale that he had mentioned?

A. No document.

MR. CONWICK: Your Honor, May I approach the bench?

(Discussion off the record out of the hearing of the jury.)

MR. CONWICK: I will withdraw the objection.

THE COURT: Next question. Let's go ahead, please.

In essence counsel contends that this statement is subject to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966). We disagree. The first part of the statement was spontaneous. Second, the officers were required to advise him as to the cause of his arrest. Defendant volunteered the exculpatory statement that it was not a stolen car in response to the officer's advice. He said that he had a bill of sale for the vehicle. The officers then asked him whether he had the bill of sale. This was of course an inquiry. At the same time it was connected with and responsive to the information which the

---

2. See 66 Am.Jur.2d Receiving Stolen Property § 11, p. 303 and see annotation 136 A.L. R. 1087 (1942) and particularly at p. 1095. See also the federal cases which are listed in 18 A.L.R.3d 259 at 319 (1968). Cases from the fourth and ninth circuits are discussed in this note. These involved the very statute which was the subject of the charge in the case at bar.

defendant had volunteered. In view of this we fail to see that there could have been any violation of the Miranda doctrine or for that matter any violation of 18 U.S.C. § 3501.

\* \* \* \* \* \*

The final contention is that the district attorney was guilty of some kind of misconduct in his final argument. The argument complained of was an illustration which was offered to the jury. Here again the error is not apparent. The argument is properly within the record.

Judgment is affirmed.