UNITED STATES of America,
Plaintiff-Appellant,

v.

Robert CRAIG et al.,
Defendants-Appellees.

No. 75–1592.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1975.

Decided Jan. 5, 1976.

Defendant's Petition for Rehearing
Denied Jan. 27, 1976.

Plaintiff's Petition for Rehearing
En Banc Granted
April 26, 1976.

Samuel K. Skinner, U. S. Atty., Chicago, Ill., for plaintiff-appellant.

Edward J. Calihan, Jr., Harvey M. Silets, Chicago, Ill., Anna R. Lavin, Chicago, Ill., of counsel, for defendants-appellees.

Before CUMMINGS and TONE, Circuit Judges, and KUNZIG, Judge.*

CUMMINGS, Circuit Judge.

In December 1974, appellee Louis A. Markert, and co-defendants Robert Craig and Thomas J. Hanahan were indicted on two charges of political corruption. Count One alleged that while members of the Illinois House of Representatives, they and their unindicted co-conspirator Pete Pappas allegedly extorted $1500 from members of the Illinois Car and Truck Renting and Leasing Association, inducing the payments "under color of official right" in violation of the Hobbs Act (18 U.S.C. § 1951). Count Two charged that the same individuals engaged in a scheme to defraud the citizens of Illinois of their "loyal, faithful and honest services in their official positions" and "of their right to have the legislative business of the State of Illinois conducted honestly" by accepting $1500 to block passage of a certain bill. The scheme was said to violate the Mail Fraud Statute (18 U.S.C. § 1341).

During the grand jury's investigation of alleged corruption in the Illinois General Assembly, the appellee consented to interviews with postal inspectors in September 1973 and to an interview with postal inspectors and an Assistant United States Attorney in November 1974. In addition, he testified under subpoena before the grand jury on September 13, 1973. At all times, appellee was represented by counsel and informed of his right to refuse to answer questions by asserting his Fifth Amendment privilege against self-incrimination. He declined, however, to invoke this privilege and answered all questions put to him by the postal inspectors, Assistant United States Attorney and before the grand jury.

In February 1975, Markert moved to suppress his grand jury testimony and the other statements he gave to government agents on the ground that they were obtained from him in violation of the federal and state Speech or Debate Clauses. A few weeks later, the district judge ruled that Markert was entitled to the protection of the privilege accorded by the Speech or Debate Clause of the Illinois Constitution.[1] Consequently, the district court ordered Markert to provide "a concise written statement of what evidence, if any, was taken from him in violation of his [Illinois] constitutional privilege."

Subsequently, the district court handed down an unreported memorandum opinion and order granting Markert's motion to suppress certain portions of his grand jury testimony and parts of the interviews he gave to postal inspectors and the Assistant United States Attorney. The court decided that a legislator could not waive the privilege accorded by the Speech and Debate Clause of the State Constitution and "that the executive and judicial branches are prohibited from inquiring into legislative activities." The Government has appealed pursuant to 18 U.S.C. § 3731.

---

* Judge Robert L. Kunzig of the United States Court of Claims is sitting by designation.

1. In pertinent part, Article 4, Section 12, of the Illinois Constitution of 1970 provides:

"* * * A member of the [General Assembly] shall not be held to answer before any other tribunal for any speech or debate, written or oral, in either house. * * *"

The primary question is whether state legislators have a Speech or Debate privilege, conferred either by the Illinois Constitution or as a matter of federal common law, which bars the admission of certain evidence against state legislators in a federal criminal prosecution. If so, we must then decide whether. Markert waived that privilege.

I

■ The Federal Rules of Evidence became effective July 1, 1975.[2] Rule 501 is the pertinent rule and provides as follows:

"Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."

This version of Rule 501 does not alter the pre-existing criminal law in the federal courts. The standard embodied in the first sentence of Rule 501 was derived from Rule 26 of the Federal Rules of Criminal Procedure. See Senate Report No. 93–1277, 93rd Cong., 2d Sess., 4 U.S.Code Cong. & Admin.News, pp. 7051, 7058 (1974); House Report No. 93–650, 93rd Cong., 2d Sess., 4 U.S.Code Cong. & Admin.News, pp. 7075, 7082 (1974). Rule 26 provided:

"The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."[3]

This rule was promulgated in 1944 (effective in 1945) as part of the Federal Rules of Criminal Procedure. Prior to those rules, the law of evidence to be applied in federal criminal cases was uncertain. See Howard, Evidence in Federal Criminal Trials, 51 Yale L.J. 763 (1942). Neither state law nor federal law clearly applied. The governing statute, the Rules of Decision Act, provided that "the laws of the several states, except where the constitution, treaties, or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States in cases where they apply" (1 Stat. 92, now 28 U.S.C. § 1652). As interpreted by the Supreme Court, the statute required the federal courts in a criminal case to apply the law of the state in which the trial was held as it existed in 1789. *United States v. Reid,* 53 U.S. 361, 363, 13 L.Ed. 1023. If the state was admitted to the Union after 1789, the common law as of the date of admission controlled. *Logan v. United States,* 144 U.S. 263, 303, 12 S.Ct. 617, 36 L.Ed. 429. These principles, however, were not strictly followed. At times, the Supreme Court examined state laws of evidence in the light of "general authority and sound reason," rejecting them where they were antiquated or inappropriate. *Benson v. United States,* 146 U.S. 325, 335, 13 S.Ct. 60, 36 L.Ed. 991; see *Rosen v. United States,* 245 U.S. 467,

---

**2.** Under *United States v. McCarthy,* 445 F.2d 587, 590–591 (7th Cir. 1971), this Circuit has applied these rules even before their effective date.

**3.** After the Federal Rules of Evidence were adopted in 1975, Rule 26 was amended to provide as follows:

"In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by an Act of Congress or by these rules, the Federal Rules of Evidence, or other rules adopted by the Supreme Court."

38 S.Ct. 148, 62 L.Ed. 406. Finally in *Funk v. United States,* 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369, and *Wolfle v. United States,* 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617, the Court abandoned any strict adherence to state rules of evidence in criminal cases, adopting instead a flexible standard which would allow the federal courts to modify or disregard local laws of privilege "in the light of reason and experience." 291 U.S. at 12, 54 S.Ct. at 279. These two cases were the basis for Rule 26. See Advisory Committee Notes to Rule 26; Vanderbilt, New Rules of Criminal Procedure, 29 A.B.A.J. 376, 377. Under Rule 26 the federal courts were free to fashion a federal law of evidence consistent with the Federal Rules of Criminal Procedure and Congressional statutes. See *Elkins v. United States,* 364 U.S. 206, 216, 80 S.Ct. 1437, 4 L.Ed.2d 1669; Cummings, The Third Adventure, 29 A.B.A.J. 654, 655. As the 1940 Criminal Rules Enabling Act (18 U.S.C. § 3771) provided in pertinent part:

> "All laws in conflict with such rules [of criminal procedure] shall be of no further force and effect after such rules have taken effect."

The House Committee Report on Section 3771 showed that its purpose was to render it unnecessary to "search the common law, statutes, and constitutional provisions of the States * * *" (H.Rep.No.2492, 76th Cong., 3d Sess., 2 (1940)), in determining the admissibility of evidence in criminal cases. Thus Rule 26 envisioned that the admissibility of evidence in criminal cases in federal courts would be governed by federal law and would not be dependent upon diverse state laws, including state constitutional provisions. *Elkins v. United States, supra,* 364 U.S. at 216, 80 S.Ct. 1437; *Heathman v. United States District Court,* 503 F.2d 1032, 1034 (9th Cir. 1974).

■ Similarly, Rule 501 contemplates that "federal privilege law applies in criminal cases." Conference Report No. 93–1597, 93rd Cong., 2d Sess., 4 U.S.Code Cong. & Admin.News, pp. 7098, 7100 (1974). However, nothing in the language of the rule or its legislative history indicates that courts are prohibited from recognizing as a matter of federal common law a speech or debate privilege for state legislators. The legislative history of Rule 501 was indeed stormy. The Supreme Court Advisory Committee's draft contained nine non-constitutional privileges (56 F.R.D. 234–256), and its proposed Rule 501 provided that only the enumerated privileges and those required by the federal Constitution or Act of Congress need be recognized by the federal courts (56 F.R.D. 230). This draft of Article V on Privileges aroused such furor when the Supreme Court submitted it to Congress that the House Committee on the Judiciary eliminated the nine privileges in favor of the present Rule 501. This was done because the rules as submitted to Congress "contained controversial modifications or restrictions upon common law privileges." Senate Rep.No.93–1277, *supra,* 4 U.S.Code Cong. & Admin.News, p. 7058 (1974). With this background, surely there would have been a hint in the history of revised Rule 501 if Congress had intended to override the common law privilege inherent in the Speech or Debate Clause of the federal and state constitutions.

■ These rules mandate that we neither categorically reject nor accept the defendant's claim of a speech or debate privilege. Rather, we are instructed to determine whether "the principles of the common law * * * in the light of reason and experience" dictate the recognition of a federal common law speech or debate privilege to be applied in federal criminal prosecutions of state legislators. We hold that Markert has such a privilege.

A product of the 17th century struggle for parliamentary supremacy, legislative freedom of speech and debate "was taken as a matter of course by those who severed the Colonies from the Crown and founded our Nation." *Tenney v. Brandhove,* 341 U.S. 367, 372, 71 S.Ct. 783, 786, 95 L.Ed. 1019. The Speech or

Debate Clause of the federal Constitution was adopted at the constitutional convention without discussion or dissent. See V Elliot's Debates 406 (1836 ed.); II Records of the Federal Convention 246 (Farrand ed. 1911). Most states have incorporated similar provisions in their constitutions. See *Tenney v. Brandhove, supra,* 341 U.S. at 373–375, 71 S.Ct. 783. And in its most recent cases, the Supreme Court has reaffirmed that the Speech or Debate Clause is an essential tenet of the American political system. See *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324; *Doe v. McMillan,* 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912; *Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583; *United States v. Brewster,* 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507.

The clause originated, and its purpose remains, "to preserve the principle that the legislature must be free to speak and act without fear of criminal and civil liability." *Tenney v. Brandhove, supra,* 341 U.S. at 375, 71 S.Ct. at 788. It is immaterial that the legislator may have had an unworthy motive. As Justice Frankfurter explained in *Tenney* (at 377, 71 S.Ct. at 788):

> "Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good."

This protection of the legislature's independence applies whether the judicial proceeding is civil or criminal. The privilege developed in England in response to the king's seditious libel prosecutions of dissident members of Parliament. See *United States v. Johnson,* 383 U.S. 169, 181–183, 86 S.Ct. 749, 15 L.Ed.2d 681. Similarly, the Supreme Court has held that the clause applies to criminal prosecutions of members of Congress. *United States v. Brewster, supra; United States v. Johnson, supra.* The express purpose of the clause is to protect legislators "against possible prosecution by an unfriendly executive and conviction by a hostile judiciary" for their acts as legislators. *United States v. Johnson, supra,* 383 U.S. at 179, 86 S.Ct. at 754. The clause therefore contains substantive and evidentiary elements. The content of a legislator's speech on the floor of the chamber or comment in Committee room cannot be made the basis of either civil (*Doe v. McMillan, supra,* 412 U.S. at 312, 95 S.Ct. 2018; *Powell v. McCormack,* 395 U.S. 486, 502–503, 89 S.Ct. 1944, 23 L.Ed.2d 491; *Dombrowski v. Eastland,* 387 U.S. 82, 85, 87 S.Ct. 1425, 18 L.Ed.2d 577; *Tenney v. Brandhove, supra,* 367 U.S. at 377, 71 S.Ct. 783; *Kilbourn v. Thompson,* 103 U.S. 168, 203, 26 L.Ed. 377) or criminal liability. *Gravel v. United States, supra,* 408 U.S. at 624, 92 S.Ct. 2614; *United States v. Brewster, supra,* 408 U.S. at 514, 92 S.Ct. 531; *United States v. Johnson, supra,* 383 U.S. at 180, 86 S.Ct. 749. Nor may legislators be required to answer questions about their legislative activities. *United States v. Brewster, supra,* 408 U.S. at 525, 92 S.Ct. 2531; *United States v. Johnson, supra,* 383 U.S. at 183, 86 S.Ct. 749. In *Johnson,* the Court approved the English rule that "the motives or intentions of members of either House [of Parliament] cannot be inquired into by criminal proceedings with respect to anything they may do or say in the House." 383 U.S. at 183, 86 S.Ct. at 757, quoting *Ex parte Wason,* L.R. 4 Q.B. 573, 577 (1869). Although construed broadly to protect any activity "generally done in a session of the House by one of its members in relation to the business before it" (*United States v. Johnson, supra,* 383 U.S. at 179, 86 S.Ct. at 755; *Kilbourn v. Thompson, supra,* 103 U.S. at 204, 26 L.Ed. 377), the privilege does not apply to a criminal proceeding which "does not draw in question the legislative acts of the defendant member of Congress or his motives for performing them." *United States v. Brewster, supra,* 408 U.S. at 510, 92 S.Ct. at 2537; *United States v. Johnson, supra,* 383 U.S. at 185, 86 S.Ct. 749.

Only the evidentiary aspect of the speech or debate privilege is involved in this appeal. Markert contends simply

that he cannot be required to answer questions put to him by the grand jury and government officials if the inquiry delves into his conduct as a legislator on matters before the Illinois General Assembly. This evidentiary privilege is a necessary prophylactic. *United States v. Johnson, supra,* 383 U.S. at 182, 86 S.Ct. 749. Its purpose is the same as that of the substantive aspect of the Speech or Debate Clause: preservation of the independence of the legislature. *Id.*

The Government does not challenge this construction of the speech or debate privilege. It concedes that were it attempting to prosecute a member of Congress, he would enjoy the privilege Markert asserts in this case. The Government contends however that the privilege should apply only to questioning of legislators by co-equal branches of government. The policy served by the privilege, the Government argues, is separation of powers; because the national government is supreme, the privilege is inapplicable in this case.

This argument ignores the federal nature of the American system of government. The Constitution confers upon the national government only limited powers. Those powers not granted remain within the domain of the separate states. The reservation of power for the states is not only the import of the Tenth Amendment but also a basic understanding of the draftsmen of the Constitution. "The proposed Constitution, so far from implying an abolition of the State governments * * * leaves in their possession certain exclusive and very important portions of sovereign power. This fully corresponds, in every rational import of the terms, with the idea of a federal government." The Federalist, No. 9 at 76 (New American Library Ed. 1961).

The role of the states under the new federal constitution was also a central issue in the ratification debates. Opponents claimed that the new national government would soon engulf the states, eliminating all of their power and control over local affairs. See II Elliot's Debates, *supra* at 308 (New York), at 469 (Pennsylvania); III Elliot's Debates, *supra* at 171 (Virginia). Yet in state after state speakers arose to assure their fellow delegates that the Constitution would work no such change; the states would remain an important unit of the government. See II Elliot's Debates, *supra* at 168 (Massachusetts), at 199 (Connecticut); IV Elliot's Debates, *supra* at 316 (South Carolina). The Constitution creates a federal system of government; people are subject to two sets of laws, those of the national government and those of the states. The essence of this federal structure is that on matters of national importance, the Congress shall legislate; on matters of local concern, the state legislatures shall enact the laws. See The Federalist No. 38, *supra* ; Grant, The Nature and Scope of Concurrent Power, 34 Columbia L.Rev. 995 (1934). Therefore, state legislatures acting within the scope of their powers perform a function as vital to the governance of the state as the role Congress fulfills with regard to the nation as a whole.

Although the speech or debate privilege embraces notions of the separation of powers among co-equal branches of government, its primary message is that legislatures must be able to discharge their lawful responsibility in an atmosphere free from the threat of interference by other governmental units. A legislator in considering whether to support or oppose a proposed law must be free to reflect on the merits; he must not be deterred from advocating a position by the threat of prosecution by a hostile executive. The evil is the fact of deterrence; whether the threat emanates from the local or national executive makes no difference.

In the present case, the United States Attorney commendably conceded at the oral argument that a refusal to recognize a speech or debate privilege for state legislators would have an inhibiting effect on the conduct of members of the Illinois General Assembly. This threat to the legislature's independence is fun-

damentally inconsistent with the idea of legislative action reflected in the policy, purpose and history of the privilege and inherent in the words: "for any Speech or Debate in either House, they shall not be questioned in any other Place." U.S. Const. Art. 1 § 6. Deterring a legislator from advancing a point of view, or influencing how he votes by requiring him to explain his motives before a grand jury is precisely the evil the speech or debate privilege intends to prevent. The protection of the First Amendment does not ameliorate this threat to legislative independence. The protection of freedom of speech does not provide a privilege against giving evidence. *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626. It does not prohibit a jury from questioning the motives of the speaker. See *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686. Therefore, it would not be an adequate substitute for the speech or debate privilege. Thus in view of the purposes of the speech or debate privilege, its common law history, and the important role of the states in governing the country, we hold that state legislators are entitled to a federal common law speech or debate privilege applicable in federal criminal prosecutions. The privilege is simply too important to our conception of government to be abolished by judicial fiat in a federal crimi-

nal prosecution under a statute of general applicability.[4] The concurring opinion herein incorrectly, we believe, assumes that the existence of this privilege is dependent on an underlying immunity.[5]

Principles of federal-state comity—"a proper respect for state functions" (*Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669)—reinforce our conclusion that this particular privilege was not rescinded by the Federal Rules of Evidence. Perhaps somewhat idealistically, the Court in *Tenney v. Brandhove, supra,* 341 U.S. at 378, 71 S.Ct. 783, 95 L.Ed. 1019, stated that legislative abuses were to be corrected by self-discipline and the electorate. Subsequently, in *United States v. Brewster, supra,* 408 U.S. at 520, 92 S.Ct. at 2541, 33 L.Ed.2d 507, the Court more prudently noted that not only the "jurisdiction of Congress to punish its Members is not all-embracing," but also that the power of self-discipline has inherent limits. Here, however, the State of Illinois is under no such disabilities. While it is within the province of the United States Attorney to prosecute local officials who violate federal law, the primary responsibility for ferreting out their political corruption must rest, until Congress directs otherwise, with the State, the political unit most directly involved. Federalist No. 17, *supra* at 120. Admittedly, legislators may abuse their freedom of de-

**4.** The Hobbs Act (18 U.S.C. § 1951) and the Mail Fraud Statute (18 U.S.C. § 1341) are not narrowly drawn attempts by Congress to regulate the conduct of state legislators. These statutes therefore provide no compelling federal interest which requires us to consider whether the privilege may be abrogated by Congress.

**5.** The concurring opinion argues that because state legislators have no official immunity from federal criminal prosecutions, they should likewise have no privilege. But the evidentiary privilege conferred on members of Congress follows not from any substantive immunity but from the Speech or Debate Clause itself. A member of Congress is not immune from prosecution on charges of bribery or conflict of interest. *United States v. Brewster, supra; United States v. Johnson, supra.* Yet the prosecutor is prohibited from attempting to prove those offenses by questioning the

congressman about the motives for his legislative acts. *Ibid.* The privilege rests on the constitutional judgment that the courts are not deemed the proper place to hold legislators accountable for their acts as elected representatives. *Tenney v. Brandhove, supra,* 341 U.S. at 378, 71 S.Ct. 783.

Implicitly, the concurring opinion argues that this principle of government is not applicable here because state legislators have no reason to expect interference in their affairs by a United States Attorney. This argument not only ignores the reality of the case, evidenced by the concession of the United States Attorney at oral argument that Illinois legislators would be inhibited in their official conduct were no privilege recognized; it also disregards the wisdom of the founding fathers, who feared that the federal government would impermissibly intrude upon the power of the states to govern their own affairs. See Federalist Nos. 23, 29, *supra.*

bate and discussion. But the common law history of the privilege in England and the United States teaches emphatically that it is better to tolerate the potential abuses than to risk the harm to our system of government that would result from inhibiting a legislator's discharge of the responsibility conferred upon him by the electorate. Our decision today does nothing more than recognize that important judgment.

## II

Having determined that Markert enjoys a common law speech or debate privilege, we must now determine whether he waived its protection. The Speech or Debate Clause is intended to provide a personal safeguard for the individual legislator and an institutional immunity for the legislature itself. *United States v. Brewster, supra,* 408 U.S. at 507, 92 S.Ct. 2531; *United States v. Johnson, supra,* 383 U.S. at 179, 86 S.Ct. 749. This dual protection follows from the belief that the legislature's independence is predicated upon the independence of its members. *Tenney v. Brandhove, supra,* 341 U.S. at 377, 71 S.Ct. 783. As long as the individual legislator can perform his function free from the threat of judicial and executive interference, the policy of the privilege is not offended. It therefore follows that to the extent the inquiry impugns only the personal independence of the legislator and does not call into question the independence of other members of the body, the protection of the speech or debate privilege can be waived.

In a criminal prosecution, a state legislator has a right under the due process clause to put into issue his own conduct as a representative if relevant. See *United States v. Nixon,* 418 U.S. 683, 711, 94 S.Ct. 3090, 41 L.Ed.2d 1039;

*Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019. Once introduced, the prosecution must be permitted to respond. Recognition of a privilege means that some relevant evidence will not be before the trier of fact. Because of the policies supporting the privilege, the courts are willing to tolerate this "derogation of the search for truth." *United States v. Nixon, supra,* 418 U.S. at 709, 94 S.Ct. at 3108. However, it is a far more severe, and we believe impermissible, distortion of that process to admit evidence without affording the other party a chance to respond, or to hear testimony without permitting the opposition to cross-examine. This is fundamentally inconsistent with the view that "the twofold aim [of criminal justice] is that guilt shall not escape or innocence suffer." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314. Once the legislator has chosen to make his conduct an issue, the court's interest that its processes not be subverted outweighs the claim of privilege. See *Branzburg v. Hayes, supra.*

This analysis is consistent with the Supreme Court's note in *Gravel v. United States, supra,* 408 U.S. at 622, n. 13, 92 S.Ct. 2614, 33 L.Ed.2d 583, that a Senator can waive his aide's claim of privilege.[6] If so, the Senator, and Markert in this case, should similarly be able to waive his own privilege. The courts have often held that evidentiary privileges may be waived by the involved individual. *E. g., United States v. Pauldino,* 487 F.2d 127 (10th Cir. 1973), certiorari denied, 415 U.S. 981, 94 S.Ct. 1572, 39 L.Ed.2d 878; *United States v. Moorman,* 358 F.2d 31 (7th Cir. 1966), certiorari denied, 385 U.S. 866, 87 S.Ct. 127, 17 L.Ed.2d 93; *Johnson v. United States,* 270 F.2d 488 (9th Cir. 1959), certiorari denied, 362 U.S. 924, 80 S.Ct. 677, 4

---

**6.** The defendant contends that this footnote means that the Senator could simply acknowledge to the court that the aide was not acting as his agent. If so, the footnote is extraneous because the privilege would not apply. Therefore, it seems likely that the Court meant a Senator could require his aide to testify about actions which, if done by the Senator, would

be within the scope of the privilege. Since the aide and the Senator are considered one for the purposes of the privilege (*Gravel v. United States, supra,* 408 U.S. at 616, 92 S.Ct. 2614), the Senator must be able to waive the protection of the clause for himself as well as his aide.

L.Ed.2d 742. The essence of a waiver is voluntary conduct. A decision to forego the protection of a privilege, to be valid, must be a free choice, and hence presents no challenge to the independence of the legislator.[7] Markert has not shown why his privilege should not be waivable as long as the waiver is limited to his own conduct.

In deciding whether Markert waived his privilege in this case, we need not find a knowing and intelligent forfeiture of the right. See *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461; *United States v. Escander,* 465 F.2d 438, 441 (5th Cir. 1972); *United States v. Michael,* 426 F.2d 1067, 1069 (7th Cir. 1970). The lesser standard of voluntariness applies because the policy served by the privilege is not related to the fairness of the trial. *Schneckloth v. Bustamonte,* 412 U.S. 218, 242, 93 S.Ct. 2041, 36 L.Ed.2d 854. Under the test of voluntariness, it need be shown only that the testimony is the "product of an essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamonte, supra,* 412 U.S. at 225, 93 S.Ct. at 2047; *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037. The question is the defendant's subjective state of mind, to be determined after an examination of all the facts and circumstances. *Schneckloth v. Bustamonte, supra,* 412 U.S. at 249, 93 S.Ct. 2041; *Kelly v. Peyton,* 420 F.2d 912, 914 (4th Cir. 1970).

Markert contends that the facts of this case indicate that the decision to testify was not freely made. The heart of his argument is that he was not informed of his right to claim a speech or debate testimonial privilege either by the Government or by his own counsel. However, the Supreme Court has never held that the failure to inform the defendant of a privilege unrelated to trial fairness mandates a finding that the decision was not voluntary. *Schneckloth v. Bustamonte, supra,* 412 U.S. at 227, 93 S.Ct. 2041; accord, *Byrd v. Lane,* 398 F.2d 750, 755 (7th Cir. 1968), certiorari denied, 393 U.S. 1020, 89 S.Ct. 625, 21 L.Ed.2d 564. When he appeared before the grand jury, he gave potentially damaging testimony rather than relying on his privilege against self-incrimination, of which he had been informed. Because he made a conscious choice to testify, he waived the instant privilege. Although subpoenaed before the grand jury, Markert was not compelled to testify in violation of any of his rights. See *United States v. Calandra,* 414 U.S. 338, 346, 94 S.Ct. 613, 38 L.Ed.2d 561; *Kastigar v. United States,* 406 U.S. 441, 448, 92 S.Ct. 1653, 32 L.Ed.2d 212. Because he was a state legislator, knowledgeable in the workings of the Government and represented by competent counsel, his election to testify waived his Speech or Debate Clause privilege.

The order of suppression is reversed and the cause is remanded for further proceedings consistent herewith.

TONE, Circuit Judge (concurring).

I concur in the result. I agree with the court that the speech or debate clause of the Illinois Constitution is inapplicable in this federal criminal proceeding, and that the question to be decided is whether the federal common law of evidence includes the privilege asserted. I disagree, however, with the court's view that, absent waiver, the defendant could claim a speech or debate privilege under the federal common law of evidence.

---

7. Because the Speech or Debate Clause embodies institutional as well as personal protection, the scope of the waiver must be carefully limited. The difficulty is that the individual legislator's testimony and other evidence may involve not only his conduct but also that of the body as a whole. At that point the law is clear that "the Speech or Debate Clause clearly proscribes at least some of the evidence."

*United States v. Johnson, supra,* 383 U.S. at 173, 86 S.Ct. at 751, 15 L.Ed.2d 681. A clear threat to the institution's ability to function would be presented if members knew that one of their colleagues, by waiving his privilege, could raise doubts in the minds of grand jurors about the propriety of their conduct. Thus any waiver must be strictly limited to the conduct of the individual representative.

Several recent opinions of the Supreme Court have made it clear that the protection afforded state legislators from liability under federal law for acts done in their legislative roles, see *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), is not based upon the speech or debate clause of the Federal Constitution, see *United States v. Brewster,* 408 U.S. 501, 516 n. 10, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972), a clause that applies only to Congress, but rather upon the common-law doctrine of official immunity. See *Wood v. Strickland,* 420 U.S. 308, 316–318, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 243–244, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Doe v. McMillan,* 412 U.S. 306, 318–320, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973). This is the same doctrine that was applied in *Pierson v. Ray,* 386 U.S. 547, 554–555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), to provide immunity to a judge for acts done in the course of his judicial duties.[1]

The speech or debate clause of the Federal Constitution protects members of Congress from being "questioned in any other Place" concerning, the Supreme Court has held, "legislative acts or the motivation for actual performance of legislative acts." See *United States v. Brewster, supra,* 408 U.S. at 509, 92 S.Ct. at 2536. The clause provides both immunity from liability and a commensurate privilege against disclosure. *Gravel v. United States,* 408 U.S. 606, 616, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). The privilege against disclosure and the immunity from liability should also be commensurate when the basis for protection is common-law official immunity. Where there is no immunity, it would be incongruous, if not useless, to recognize an evidentiary privilege. Accordingly, I think that whether the claimed privilege should be recognized as a development in the federal common law of evidence depends on whether there is an underlying immunity.

The common-law immunity of state legislators has not been held to be coextensive with that which members of Congress enjoy under the federal speech or debate clause. Even with respect to civil liability, speech-or-debate immunity is broader than official immunity. The former bars injunction actions directed at legislative activities of Congress. *E. g., Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975); *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). The doctrine of official immunity, on the other hand, has been held by one court not to bar injunctive relief against state legislative activities which offend federal law, *Jordan v. Hutcheson,* 323 F.2d 597 (4th Cir. 1963), and in other cases federal injunctions against state legislative action have been sustained without discussion of the question of immunity. *E. g., Bond v. Floyd,* 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966); *Bush v. Orleans Parish School Board,* 191 F.Supp. 871 (E.D.La.), *aff'd sub nom. Denny v. Bush,* 367 U.S. 908, 81 S.Ct. 1917, 6 L.Ed.2d 1249 (1961).

Unlike federal speech or debate immunity, see *United States v. Johnson,* 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966), common-law official immunity has not been extended to criminal liability. In *O'Shea v. Littleton,* 414 U.S. 488, 503, 94 S.Ct. 669, 680, 38 L.Ed.2d 674 (1974), the Court said:

"[W]e have never held that the performance of the duties of judicial, legislative, or executive officers, requires or contemplates the immunization of otherwise criminal deprivations of constitutional rights. . . . On the contrary, the judicially fashioned doctrine of official immunity does not reach 'so far as to immunize criminal conduct as proscribed by an Act of Congress. . . .' [Citing *Gravel v. United States, supra,* 408 U.S. at 627, 92 S.Ct. 2614]"

---

1. *Tenney v. Brandhove* and *Pierson v. Ray* held that Congress had not intended by adopting the Civil Rights Acts to abrogate the offi-

cial immunity of legislators and judges, supported as it was by strong tradition and sound reasons.

Thus judicial officers are not immune from criminal liability for conduct within the scope of their judicial duties. *Braatelien v. United States,* 147 F.2d 888, 895 (8th Cir. 1945); see also *United States v. Manton,* 107 F.2d 834 (2d Cir. 1939). State legislators are similarly subject to federal criminal liability for analogous conduct which falls within the prohibition of a federal criminal statute, as the Court stated in *O'Shea.*

Immunity from civil but not criminal liability has been regarded as sufficient to achieve the purpose of the doctrine of official immunity, which is to promote independence and fearless discharge of duty on the part of the protected officials. While the federal speech or debate clause serves the same purpose, it has an additional, more fundamental purpose grounded in the separation of powers in the federal government. As the Court said in *Gravel v. United States, supra,* 408 U.S. at 616, 617, 92 S.Ct. at 2622, 2623:

> "The Speech or Debate Clause was designed to assure a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch.

.    .    .    .    .

> "[T]he central role of the Speech or Debate Clause [is] to prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary, *United States v. Johnson,* 383 U.S. 169, 181, 86 S.Ct. 749, 755, 15 L.Ed.2d 681 (1966) . .."

There being no problem of separation of powers between the federal executive (represented in this case by the United States Attorney) and a state legislature, the Constitution itself does not create an immunity for state legislators as it does for members of Congress. I see no need for the courts to do so either. Nothing in our history or in the authorities relied upon by the court in this case suggests that there is a threat of federal executive interference with the independence of state legislatures that would warrant extending the judicially developed doctrine of official immunity beyond its traditional boundaries. Accordingly, I would hold that the state legislator's official immunity does not extend to liability under federal criminal statutes, and that he therefore has no commensurate official [2] privilege against disclosure.

In questioning the view that the existence of the privilege should depend upon whether there is a corresponding immunity, the majority states in footnote 5 that "[a] member of Congress is not immune from prosecution on charges of bribery or conflict of interest," and "[y]et the prosecutor is prohibited from attempting to prove those offenses by questioning the congressman about the motives for his legislative acts," citing *Brewster* and *Johnson.* This overlooks, I believe, an important distinction made in *Brewster.* As I understand that case, it did not hold that conduct which is not protected by an immunity from liability may nevertheless be privileged from inquiry. Brewster was charged with taking bribes in return for being influenced in respect of his official acts and with taking a bribe for an official act already performed by him. The Court held that the speech or debate clause permitted the government to prosecute those charges, because it could be done without inquiring into "the legislative acts of the defendant member of Congress or his motives for performing them." 408 U.S. at 526, 92 S.Ct. at 2544, quoting from *Johnson, supra,* 383 U.S. at 185. See also 408 U.S. at 527, 92 S.Ct. 2531. The Court said:

> "There is no need for the Government to show that appellee fulfilled the alleged illegal bargain; acceptance of the bribe is the violation of the statute, not performance of the illegal promise.

> "Taking a bribe is, obviously, no part of the legislative process or func-

---

**2.** He has of course the same privilege against self-incrimination that any other citizen has.

He has not chosen to assert that privilege in this case.

tion; it is not a legislative act." *Id.* at 526, 92 S.Ct. at 2544.

On the other hand, prosecution for legislative acts and inquiry into those acts or their motives, would have been prohibited by the speech or debate clause. Since bribe taking, however, was not protected by the speech or debate clause, the Court held that "inquiry into [such] activities" was not prohibited by the speech or debate clause. 408 U.S. at 528, 92 S.Ct. 2531. In other words, for those acts for which there was no immunity, there was likewise no testimonial privilege. Thus *Brewster* shows that the immunity and the privilege are correlated.

The majority further states in the same footnote that the testimonial privilege for state legislators "rests on the constitutional judgment that the courts are not deemed the proper place to hold legislators accountable for their acts as elected representatives," citing *Tenney v. Brandhove.* I do not believe *Tenney* supports the view that state legislators have a speech or debate immunity derived from the Federal Constitution. See p. 781 above. If they do not, and if I am correct that the doctrine of official immunity leaves state legislators criminally liable under federal law for even their legislative acts, I cannot believe they are privileged (unless they choose to avail themselves of their fifth amendment right) to withhold testimony concerning acts for which they may be prosecuted.

In reaching the conclusion expressed in this concurring opinion, I have assumed that the Mail Fraud Act (18 U.S.C. § 1341) and the Hobbs Act (18 U.S.C. § 1951) extend to conduct of a state legislator in the performance of his official duties. It would be inappropriate, if not beyond our jurisdiction, to pass on the sufficiency of the indictment in this interlocutory appeal of an order suppressing evidence. *Cf. United States v. Merritts,* 527 F.2d 713, p. 715 (7th Cir. 1975). Moreover, it is unnecessary to consider the scope of those statutes in order to decide this appeal: applying the approach of *Tenney* and *Pierson,* deter-mining whether the doctrine of official immunity shields given legislative conduct is only a preliminary step in resolving the ultimate question of whether Congress intended a statute to apply to that conduct. It is accordingly unnecessary to reach that question in order to decide this case.