THILLENS, INC., an Illinois corporation, Plaintiff-Appellee,

v.

The COMMUNITY CURRENCY EXCHANGE ASSOCIATION OF ILLINOIS, INC., et al., Defendants.

Appeal of John F. WALL and Walter McAvoy, Defendants-Appellants.

No. 83–1819.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 16, 1984.

Decided March 16, 1984.

As Revised June 11, 1984.*

---

* The original opinion in this case was issued on March 16, 1984. The plaintiff filed a petition for rehearing with suggestion for rehearing *en banc* on April 13, 1984. All of the judges on the original panel have voted to deny the petition for rehearing, and all of the active members of the court have voted to deny rehearing *en banc*. The petition for rehearing with suggestion for rehearing *en banc* therefore is denied.

Anna R. Lavin, Chicago, Ill., for defendants-appellants.

Edward T. Joyce, Joyce & Kubasiak, Chicago, Ill., for plaintiff-appellee.

Before BAUER, COFFEY and FLAUM, Circuit Judges.

BAUER, Circuit Judge.

Plaintiff Thillens, Incorporated sued the Community Currency Exchange Association, all its member exchanges, sixteen owners or controllers of those member exchanges, and former Illinois legislators John F. Wall and Walter McAvoy, the defendants before us on this appeal. Thillens alleged that the defendants violated the Sherman Anti-Trust Act, 15 U.S.C. §§ 1 & 2 (1975), the Illinois Antitrust Act, Ill.Rev. Stat. ch. 38, § 60–3 (1975), Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983 (1979), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1978), and committed the common law torts of fraud, unfair competition, and interference.

Thillens is a mobile check cashing service and currency exchange engaged principally in sending armored vehicles around the Chicago metropolitan area to cash employee paychecks for a fee. It apparently is the only mobile service in Illinois. It and the defendant currency exchanges, all of which operate from fixed locations, are regulated by the Illinois Department of Financial Institutions (DFI).

In short, Thillens alleges that the defendants conspired to drive it out of business by fixing prices and bribing legislators to lobby the DFI for enactment of regulations detrimental to Thillens and favorable to the defendant exchanges. Thillens specifically alleges that Defendants Wall and McAvoy:

> participated in the Defendants' conspiracy by accepting those bribes. In return for receiving these and other bribes, the Defendant Public Officials and, on information and belief, numerous other Illinois officials unknown to Thillens, caused DFI to promulgate rules, regulations, informal guidelines and to otherwise take action which was substantially adverse to Ambulatory Currency Exchanges, Mobile Check Cashing Services and particularly, Thillens, and which was substantially advantageous to the Defendant Exchanges, which actions by DFI would not have been taken but for the unlawful bribery and influencing of the Defendant Public Officials and other public officials who are presently unknown to Thillens.

R. 1, at 17. In addition, count seventeen of its complaint alleges in part that all defendants infringed Thillens' civil rights in violation of Section 1983 by "corrupting the process of state regulation of Thillens' business by DFI and the Illinois House of Representatives ...." R. 1, at 53.

Defendants Wall and McAvoy (hereinafter the defendants) moved to dismiss the complaint against them on the ground that as state legislators they enjoyed absolute immunity from civil liability. At the time of the alleged incidents, the defendants were members of the Illinois House of Representatives. The district court denied their motion on the ground that the act of taking a bribe is not immune from civil liability. R. 491. The court relied on *United States v. Gillock*, 445 U.S. 360, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980); *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979); *United States v. Brewster*, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972); and *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), four of the leading cases establishing the scope of official immunity. Two weeks later the court denied the defendants' motion to alter or amend its order, ruling that taking a bribe is not a part of the legislative functions of a public official under *Brewster*, 408 U.S. at 526, 92 S.Ct. at 2544. R. 498. We reverse. Although the bare act of accepting a bribe is not itself part of a legislator's function, the defendants here are entitled to immunity because Thillens' allegations are directed at legitimate legislative functions.

The protection afforded state legislators from liability under federal law for actions within the sphere of legitimate legislative activity arises out of the common law doctrine of official immunity. *See United States v. Craig*, 528 F.2d 773, 781 (7th Cir.) (Tone, J., *concurring*), *cert. denied*, 425 U.S. 973, 96 S.Ct. 2171, 48

L.Ed.2d 796 (1976), *concurrence adopted as opinion of* en banc *court,* 537 F.2d 957 (7th Cir.), *cert. denied,* 429 U.S. 999, 97 S.Ct. 526, 50 L.Ed.2d 609 (1976). The immunity extends to civil, and not to criminal, liability in large part because civil immunity alone is deemed sufficient to promote the unfettered debate necessary for the effective discharge of legislative duties. *Id.,* 528 F.2d at 783.

■ The doctrine of official immunity clearly is implicated in this federal civil action.[1] Thillens contends, nevertheless, that application of the doctrine is improper because the defendants' actions it challenges were outside the sphere of legitimate legislative activity. We disagree. Thillens' complaint is directed at more than the mere acceptance of bribes. Its causes of action focus on the defendants' attempts to use their legislative positions to influence regulation of currency exchanges. Those attempts were legitimate legislative activity.

Thillens first argues that any actions the defendants took to influence the DFI and laws regulating currency exchanges were outside their legislative duties. A public official's actions must relate to matters properly before him to be protected from liability. In the context of the Speech and Debate Clause, U.S. Const. art. I, § 6, cl. 1, the Supreme Court has noted that to be immune, a legislator's activities must be:

> an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*Gravel v. United States,* 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972). Similarly, the Court has written that constitutional immunity "prohibits inquiry only into those things generally said or done ... in the performance of official duties and into the motivation for those acts." *Brewster,* 408 U.S. at 512, 92 S.Ct. at 2537; *see also United States v. Helstoski,* 442 U.S. 477, 489, 99 S.Ct. 2432, 2439, 61 L.Ed.2d 12 (1979); *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 504, 95 S.Ct. 1813, 1821, 44 L.Ed.2d 324 (1975). For the purposes of this case, the scope of immunized activities under the Speech and Debate Clause is equivalent to the scope of immunity under the common law doctrine of official immunity. *See Doe v. McMillan,* 412 U.S. 306, 324, 93 S.Ct. 2018, 2030, 36 L.Ed.2d 912 (1973). Thus, the issue before us simply is whether the acts complained of related to the business of the legislature.

Thillens contends that legislative functions as they are defined in *Gravel* and *United States v. Johnson,* 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966), do not include the defendants' efforts to control or influence the DFI. The *Johnson* Court considered charges that a congressman improperly wielded his influence on the Department of Justice. The Court ruled that attempts to influence the Justice Department to dismiss indictments against a loan company were not a part of a congressman's duties. In *Gravel,* a senator arranged publication of the Pentagon Papers by a private printing company. The Court refused to immunize the publication of materials outside the course of regular Congressional proceedings.

The disputed actions in *Johnson* and *Gravel* involved congressmen acting outside their legislative duties not simply because they were dealing with agencies apart from Congress, but because the activities did not concern any business of the legislature. In both *Johnson* and *Gravel,* the Court immunized the congressmen for their legitimate actions. The *Johnson* Court ruled that the Speech and Debate Clause protected the congressman from inquiry into the background of a speech delivered in the House of Representatives. The *Gravel* Court applied immunity to protect the senator from inquiry into his work with the Senate subcommittee reviewing the Pentagon Papers.

It is not necessary in this case to decide the issue whether a legislator should be immunized in his or her dealings with agencies apart from the legislature regarding legitimate legislative issues, for the complaint here alleges wrongdoing directly involving purely legislative functions. Thillens recognizes that the conspiracy involving the defendants which may have begun when they were bribed culminated in legis-

---

**1.** *See, e.g., Star Distributors, Ltd. v. Marino,* 613 F.2d 4 (2d Cir.1980) (official immunity applies to civil damage and injunctive suits).

lation affecting the DFI.[2] Thillens nonetheless argues that it is not concerned with what transpired after the money passed, but rather only is concerned that the money was paid. This reasoning is flawed because the defendants' conspiratorial role cannot be so neatly categorized and proved. The defendants took money as payment for their efforts to pass laws influencing the DFI's regulation of the currency exchange industry.

Thillens' charges thus broadly implicate the defendants' function of influencing the legislative process regarding a legitimate legislative issue. Establishing the defendants' role in the conspiracy naturally would require investigation into activities cloaked with immunity, including study of staff activities and motivations for acts of the defendants and their staffs geared toward enacting the challenged laws. Official immunity was designed to prevent a plaintiff from using a civil action to peer so deeply into the legislative process. As the Supreme Court stated, "One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader . . . ." *Tenney,* 341 U.S. at 377, 71 S.Ct. at 788.

Thillens' second argument is that because the complaint is directed principally at the defendants' acceptance of bribes, the defendants cannot be protected. Again we must disagree. Thillens will not be able to show that it is entitled to relief "without proof of a legislative act or the motives or purposes underlying such an act." *Gravel,* 408 U.S. at 621, 92 S.Ct. at 2625; *see Brewster,* 408 U.S. at 526, 92 S.Ct. at 2544. As noted above, Thillens' causes of action are inextricably linked to allegations that the defendants misused their legislative authority and influence to enact legislation detrimental to Thillens. Its conspiracy theories depend on proof of the defendants' motives and on a showing of actions taken after bribes were accepted. *Cf. Johnson,* 383 U.S. at 176–77, 86 S.Ct. at 753–54 (In criminal prosecution alleging conflict of interest and conspiracy to defraud under 18 U.S.C. §§ 281 & 371, the conspiracy theory failed under Speech and Debate Clause immunity because it depended on proof of motivations and lack of good faith.).[3] Thillens is challenging directly actions within the protected sphere of legislative activity. The defendants therefore are immune from liability for the allegedly wrongful acts stated in the complaint.

The district court should have granted the defendants' motion to dismiss the complaint against them.

REVERSED AND REMANDED WITH INSTRUCTIONS.

---

2. For example, at oral argument Thillens' lawyer responded to a question from the panel, indicating her recognition of the legislative activity involved in this case:

> *Q:* The complaint you had as to the administrative agencies that denied your licenses: The authority to deny the licenses came from the acts passed by the legislature. And to get that act passed the defendants other than McAvoy and Wall paid money to, among others, Wall and McAvoy to get the bill passed. Am I correct in my analysis?
>
> *A:* You are correct in your analysis. But I would like to further define the role of Mr. Wall and Mr. McAvoy in that participation. I think that Mr. Wall and Mr. McAvoy were [not?] acting as legislators when they accepted the bribes.

Later, Thillens' lawyer again characterized the defendants' activities, stating:

> I think it's important to distinguish [establish?] here exactly what the bribes were used for. . . . The money that was paid in this case was for not as important of legislation as the Currency Exchange Act, the general governing law, but for more specific legislation regulating the day-to-day functions of the currency exchange industry. So I don't think it can be as easily pointed to as a specific piece of legislation that the bribes were intended to affect. Instead, the bribes pointed out the involvement of Mr. Wall and Mr. McAvoy in this conspiracy on which damages can be based.

3. In *Craig,* the original panel of this court considered whether a member of the Illinois House of Representatives had waived his immunity to a federal criminal prosecution for political corruption. The representative was charged with extortion and scheming to defraud Illinois citizens of honest official services. In reaching its conclusion that the representative had waived his immunity, the panel majority recognized that immunity would apply if not waived. *Craig,* 528 F.2d at 776–80. The *en banc* court adopted the position of the *Craig* concurrence that immunity did not apply to state legislators in federal criminal actions. *Craig,* 537 F.2d at 958. The court never questioned, however, the panel majority's stance that the charged acts fell within the sphere of the representative's legislative functions. Thus, although this court considered different legal issues in *Craig,* the factual circumstances in that case are similar to those in this case and tend to support our conclusion.